IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

```
------------------------------------------------------   .
                                                         :
                                                         :
MARK BROADBENT, et al.,                                  :
                                                         :  CASE NO. 1:07 CV 0314
                               Plaintiffs,               :
                                                         :
            -vs-                                         :  ORDER & OPINION GRANTING THE
                                                         :  DEFENDANT'S MOTION TO DISMISS
                                                         :  COUNTS 1, 3, AND 4 OF THE
ELLIOT-LEWIS CORPORATION, et al.,                        :  PLAINTIFFS' COMPLAINT
                                                         :
                               Defendants.               :
                                                         :
------------------------------------------------------
```

UNITED STATES DISTRICT JUDGE LESLEY WELLS

This matter is before the Court on co-defendant Elliot-Lewis Corporation's

("Elliot-Lewis") motion to dismiss counts one, three, and four of the plaintiffs' complaint,

pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Docket No. 5).  The plaintiffs filed

a brief in opposition (Docket No. 10), and the defendant replied (Docket No. 11).  For

the reasons that follow, the Court will grant the defendant's motion.

## I.  BACKGROUND

The facts alleged in the plaintiffs' complaint are not extensive. Elliot-Lewis has

employed co-plaintiff Mark Broadbent as a maintenance mechanic since June 1999,

and co-plaintiff Earl Smith as an engineer since July 1999.  (Docket No. 1 Ex

(hereinafter "Compl.") ¶ 3).[1]  Mr. Broadbent's and Mr. Smith's employment are covered

---

[1]  The plaintiffs' complaint is misnumbered, containing two paragraphs each numbered
"2," and two paragraphs each numbered "3."

by a collective bargaining agreement, and co-defendant International Union of Operating Engineers, Local 18-S ("Local 18-S") is the bargaining agent for the plaintiffs. Id. at ¶ 3.

Mr. Broadbent and Mr. Smith assert that even though they have performed their work responsibilities proficiently at all times, their supervisor Robert Schmitz has imposed meritless reprimands and discipline on them and Elliot-Lewis has falsely labeled them as a threat to other employees.  Id. at ¶ 5.   The plaintiffs further assert that Elliot-Lewis has denied them advancement opportunities and has forced them to work shifts that have had a negative impact on their families.  Id. at ¶ 6.  Furthermore, Mr. Broadbent and Mr. Smith state they have filed multiple grievances with Local 18-S in response to the unwarranted discipline and accusations, but that the union has failed to properly respond.  Id. at ¶ 5.

On 29 December 2006, the plaintiffs brought suit in Cuyahoga County Court of Common Pleas, alleging six causes of action:

1. Intentional infliction of emotional distress against Elliott-Lewis and Local 18-S;

2. Breach of the collective bargaining agreement against Elliott-Lewis and Local 18-S;

3. Hostile workplace against Elliot-Lewis;

4. Retaliation against Elliot-Lewis;

5. Breach of the duty of fair representation against Local 18-S; and

6. Race discrimination in violation of Ohio Revised Code § 4112.99.

(Compl.).  Elliot-Lewis removed the case to this Court on 6 February 2007 (Docket No. 1), and now moves this Court to dismiss as a matter of law plaintiffs' claims for

intentional infliction of emotional distress ("IIED"), hostile workplace, and retaliation. (Docket No. 5).

## II.  STANDARD OF REVIEW

When deciding a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  The purpose of a motion to dismiss is to allow the defendant to test the legal sufficiency of a complaint without subjecting himself or herself to discovery.  Yuhasz v. Brush Wellman, Inc., 341 F.3d 559, 566 (6th Cir. 2003).  To survive a motion to dismiss, the complaint must present "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955, 1974 (2007)(explaining that the long-standing "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957) was a "negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.").

## III.  LAW AND ANALYSIS

Defendant Elliot-Lewis motions the Court to dismiss the plaintiffs' state law claims for IIED, hostile workplace, and retaliation, arguing that each claim is preempted by federal law.[2]

The question of whether to dismiss these three claims requires consideration of

---

[2] Although the plaintiffs' complaint fails to cite a statute under which they raise their hostile workplace and retaliation claims, the plaintiffs' response brief states the claims are brought pursuant to state law.  (See Docket No. 10 p. 3).

two theories of preemption of state law claims involving labor relations - preemption

pursuant to § 301 of the Labor Management Relations Act ("LMRA"), and preemption

pursuant to San Diego Bldg. Trades v. Garmon, 359 U.S. 236 (1959). Each rule

operates with a distinct preemptive force, and both are grounded in Congress' desire for

uniform federal law in the area of labor policy. See Garmon, 359 U.S. at 246; DeCoe v.

General Motors Corp., 32 F.3d 212, 216 (6th Cir. 1994). Section 301 of the LMRA

preempts state law claims arising from a breach of a collective bargaining agreement by

requiring such claims to be raised and resolved under federal law. Mattis v. Massman,

355 F.3d 902, 905 (6th Cir. 2004). *Garmon*, on the other hand, reserves jurisdiction to

the National Labor Relations Board ("NLRB") to hear claims arising from § 7 or § 8 of

the National Labor Relations Act ("NLRA"). DeCoe, 32 F.3d at 219. Thus, where § 301

preemption implicates the Supremacy Clause, *Garmon* preemption operates under the

notions of federalism by balancing state and federal interests. Id.

This Court will first address the plaintiffs' claims for IIED and hostile workplace,

and then address the retaliation claim.

**A. IIED and Hostile Workplace**

Section 301 of the LMRA provides, "[s]uits for violation of contracts between an

employer and a labor organization representing employees in an industry affecting

commerce . . . may be brought in any district court of the United States having

jurisdiction of the parties . . . ." 29 U.S.C. § 185(a). The U.S. Supreme Court holds that

this clause preempts state law claims alleging violation of collective bargaining

agreements. See Bradshaw v. Goodyear Tire & Rubber Co., 485 F. Supp. 2d 821, 828

(6th Cir. 2007)(quoting Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463

4

U.S. 1 (1983)).  Thus, "[s]tate law does not exist as an independent source of private

rights to enforce collective bargaining contracts."  Caterpillar Inc. v. Williams, 482 U.S.

386, 394 (1987).  Any claim alleging a breach of a collective bargaining agreement

"must be resolved by reference to federal law."  DeCoe, 32 F.3d at 216 (quoting Allis-

Chalmers Corp. V. Lueck, 471 U.S. 202 (1985), internal quotation marks omitted).

Although § 301 guarantees collective bargaining agreements will be interpreted

solely on the basis of federal law, it does not interfere with substantive rights a state

may provide to workers independent of their union contracts.  DeCoe, 32 F.3d at 216.

Thus, state tort claims will survive § 301 preemption where they are independent of the

collective bargaining agreement.  Id.  The Sixth Circuit adopted a two-step analysis

for determining whether a state claim is independent of a collective bargaining

agreement or whether it is preempted by § 301:

> First, courts must determine whether resolving the state-law claim would
> require interpretation of the terms of the collective bargaining agreement.
> If so, the claim is preempted. Second, courts must ascertain whether the
> rights claimed by the plaintiff were created by the collective bargaining
> agreement, or instead by state law.  If the rights were created by the
> collective bargaining agreement, the claim is preempted.  In short, if a
> state-law claim fails either of these two requirements, it is preempted by
> § 301.

Mattis, 355 F.3d at 906.

In this case, the Court finds that the plaintiffs' claims for IIED and a hostile

workplace are preempted by § 301 because resolution of each claim will require

interpretation the parties' collective bargaining agreement.  To succeed on a claim of

IIED, the plaintiffs must demonstrate the following: (1) the defendants either intended to

cause emotional distress or knew or should have known that their actions would result

5

in serious emotional distress to the plaintiff; (2) the defendants' conduct was "so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community;" (3) the defendants' actions proximately caused the plaintiffs' psychic injuries; and (4) the mental anguish suffered by the plaintiffs is of such a serious nature that no reasonable man could be expected to endure it.  Williams v. York Intern. Corp., 63 Fed. Appx. 808, 813 (6th Cir. 2003).  To prevail on their claim for hostile workplace under O.R.C. § 4112, the plaintiffs must satisfy a prima facie case: (1) they are members of a protected class; (2) they were subjected to unwelcome harassment; (3) the harassment was based on race, color, religion, sex, national origin, disability, or age; (4) the harassment created a hostile work environment; and (5) their employer is liable.  Long v. Ford Motor Co., 193 Fed. Appx. 497, 501 (6th Cir. 2006).

Here, Mr. Broadbent and Mr. Smith complain that their employer acted outrageously and harassed them by imposing unmerited reprimands and discipline, refusing warranted advancement opportunities, and changing their work schedules. They further assert their union acted outrageously by failing to properly respond to their grievances.  Each of these allegations arise under the apparent authority of the parties' collective bargaining agreement.  See Mattis, 355 F.3d at 908 (concluding that an employee's allegations that his employer failed to promote, reduced vacation time, reassigned the employee to new position, and imposed discipline "all involve actions taken under the ostensible authority of the [collective bargaining agreement]").  Thus, to resolve these state law claims, a trier-of-fact would first need to interpret the terms of the parties' collective bargaining agreement to determine whether Elliot-Lewis' and

6

Local 18-S' conduct was extreme and outrageous so as to support a claim for IIED, and to determine whether Elliot-Lewis' conduct also amounts to unwelcome harassment that would support the plaintiffs' hostile workplace claim.  See Id. ("Without reference to the [collective bargaining agreement], we could not possibly know whether [the employer] acted outrageously or was merely insisting on his legal rights as a supervisor charged with ensuring compliance with the rules of the factory.").

Mr. Broadbent and Mr. Smith have raised a federal claim against Elliot-Lewis for breach of the collective bargaining agreement, and a federal claim against Local 18-S for breach of the duty of fair representation.  Their state law claims for IIED and hostile workplace are, in reality, these federal law claims duplicated and re-labeled as state tort claims.  Accordingly, the plaintiffs' claims for IIED and hostile workplace are preempted by § 301 and will be dismissed for failure to state a claim for which relief may be granted.

## B.  Retaliation

The plaintiffs assert that Elliot-Lewis retaliated against them for filing work related grievances with Local 18-S.  Elliot-Lewis motions to dismiss this claim on the basis that *Garmon* preemption reserves such a claim to the exclusive jurisdiction of the NLRB.

In *Garmon*, the Supreme Court held, "When an activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted."  359 U.S. at 245.  Section 7 of the NLRA governs the protected concerted activities of employees, and § 8 prohibits unfair labor practices by employers.  Id. at 241.

7

*Garmon* preemption is not without exception, however.  Acknowledging the need to balance Congress' intent for uniformity in labor policy with the notions of federalism, the Supreme Court directs courts to use a flexible approach in determining whether conduct that is regulated by the NLRA should nevertheless be subject to state control where such conduct is traditionally subject to state regulation.  Farmer v. United Bhd. of Carpenters and Joiners of Am., Local 25, 430 U.S. 290, 296-97 (1977); Northwestern Ohio Administrators, Inc. v. Walcher & Fox, Inc., 270 F.3d 1018, 1027 (6th Cir. 2001).  "Where the regulated activity is 'merely peripheral' to the central concerns of the NLRA, the states may regulate the activity."  Northwestern Ohio Administrators, 270 F.3d at 1027.

To determine whether a state claim should yield to the NLRB's exclusive jurisdiction, the Sixth Circuit instructs courts to employ a two-step inquiry: (1) whether the state maintains a significant interest in protecting its citizens from the alleged conduct; and (2) whether the state claim is identical to a claim that could have been raised with the NLRB.  Id. at 1027-28 (citing Sears, Roebuck and Co. v. San Diego County Dist. Council of Carpenters, 436 U.S. 180 (1978)).  If the state law claim is identical to that which could have been raised to the NLRB, then the NLRB maintains exclusive jurisdiction over the matter, "because the state regulation impinges directly on the Board's prerogative to fashion a uniform labor policy."  Id.

To determine whether the plaintiffs' state law claim of retaliation is preempted pursuant to *Garmon*, this Court must first find that the plaintiffs' actions are protected by § 7 or that Elliot-Lewis' conduct is prohibited by § 8.  Section 7 provides that, "[e]mployees shall have the right to self-organization, to form, join, or assist labor

8

organizations, to bargain collectively through representatives of their own choosing, and

to engage in other concerted activities for the purpose of collective bargaining or other

mutual aid or protection ...."  29 U.S.C. § 157.  The Sixth Circuit holds that the filing of a

grievance is among those rights protected by § 7.  OPW Fueling Components v.

N.L.R.B., 443 F.3d 490, 496 (6th Cir. 2006) (also upholding the NLRB's conclusion that

an employer's retaliation against an employee for having filed a grievance violates §

8(a)(1), (3), and (4) of the NLRA).  Accordingly, the plaintiffs' asserted conduct of filing a

grievance with Local 18-S is protected activity under § 7 of the NLRA.

Using the two-step inquiry explained in Northwestern Ohio Administrators, this

Court finds that the plaintiffs' retaliation claim is preempted under *Garmon*.  The

plaintiffs allege that their employer engaged in the unfair labor practice by retaliating

against them when they exercised their protected right under § 7 to file a grievance with

their union.  Even assuming the State of Ohio has a significant interest in protecting its

citizens from acts of retaliation in the workplace, the plaintiffs' state claim of retaliation

based on their protected activity of filing a grievance with the union is identical to a § 7

and § 8 claim that could have and should have been filed with the NLRB.  Accordingly,

the NLRB has exclusive jurisdiction over the plaintiffs' retaliation claim, and the claim is

preempted from this Court's jurisdiction pursuant to *Garmon*.

## IV.  CONCLUSION

The plaintiffs' state law claims for intentional infliction of emotional distress and

hostile workplace are preempted by § 301 of the NLRA, and their claim for retaliation is

preempted pursuant to the U.S. Supreme Court's holding in *Garmon*.  Accordingly, each

of these claims is dismissed pursuant to Rule 12(b)(6) for failure to state a claim for which relief may be granted.

The case will proceed on the plaintiffs' three remaining causes of action:

1.      Breach of the collective bargaining agreement;

2.      Breach of the duty of fair representation; and

3.      Racial discrimination in violation of O.R. C. § 4112.99.


IT IS SO ORDERED.

                                                      /s/ Lesley Wells
                                                    UNITED STATES DISTRICT JUDGE

Date: 11 September 2007